Filed 6/24/22  Conservatorship of A.S. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| Conservatorship of the Person and Estate of A.S. | C095250 |
| EL DORADO COUNTY PUBLIC GUARDIAN, as Conservator, etc., | (Super. Ct. No. PMH20200009) |
| Petitioner and Respondent, | |
| v. | |
| A.S., | |
| Objector and Appellant. | |

After a bench trial, the trial court found objector and appellant A.S. to be gravely disabled within the meaning of the Lanterman-Petris-Short (LPS) Act (Welf. & Inst. Code, § 5000 et seq.).  The trial court reappointed the El Dorado County the public guardian (the public guardian) as A.S.'s conservator.  A.S. does not challenge the trial

court's substantive finding. Rather, she challenges the trial court's determination that she "waived" her right to a jury trial by failing to appear at trial.

A proposed conservatee has a right to demand a jury trial. (Welf. & Inst. Code, § 5350, subd. (d).) And a trial court must inform a proposed conservatee of this right before the establishment of conservatorship. (Prob. Code, § 1828, subd. (a)(6).) But, in civil cases, a party "waives trial by jury" "[b]y failing to appear at the trial." (Code Civ. Proc., § 631, subd. (f)(1); statutory section citations that follow are to the Code of Civil Procedure.) Given these three provisions, how should a trial court proceed when a proposed conservatee refuses to appear at any hearing, including trial?

On appeal, A.S. contends the trial court here committed statutory and constitutional error by determining that—though it had not advised her of her right to a jury trial—A.S. waived that right under section 631, subdivision (f)(1) when she did not appear at trial. A.S. also contends the trial court committed statutory error by commencing the one-year period of conservatorship from the date of the bench trial, rather than from the date the original conservatorship expired.

Disagreeing with these contentions, we affirm the judgment.

## FACTS AND HISTORY OF THE PROCEEDINGS

In April 2020, the public guardian filed a petition for appointment of conservatorship of A.S. and her estate. A report by a county investigator, filed in connection with the April 2020 petition, detailed A.S.'s struggles with mental health. Quoting a psychiatrist who had recently examined A.S., the report observed that A.S. suffered from "psychotic symptoms of delusions and paranoid ideation," impairing her judgment and impulse control.

The report also explained that, in an April 2020 interview, A.S. (a) "repeatedly told th[e] investigator she did not want to be conserved," (b) expressed a desire to "work with her social worker . . . and find low income housing in Sacramento," and (c) refused

2

to answer multiple questions posed by the investigator, saying, " 'I don't trust you,' " and versions of " 'I won't answer, that is none of your business.' "

On June 10, 2020, the trial court issued an order naming the public guardian as conservator of the person and the estate of A.S. under the LPS Act. The trial court further ordered that the conservatorship would "expire on 6/10/21 unless extended in accordance with law." On May 13, 2021, the public guardian filed a petition for reappointment as A.S.'s conservator (reappointment petition), observing that A.S.'s conservatorship would "automatically terminate . . . on June 10, 2021, unless a conservator is appointed for a succeeding one-year period."

A July 7, 2021 minute order states that A.S.—"present by counsel"—"demand[ed] [a] jury trial." A July 26, 2021 minute order states that A.S.—again "present by counsel"—"would not get in the car" that was "sent to bring [her]" to the trial court. That minute order also reflects that A.S.'s counsel "state[d] her client want[ed] a jury trial." A September 9, 2021 minute order states that, on the trial court's own motion, "Jury Trial [was] continued to" November 2021.

On October 17, 2021, the parties submitted a "Joint Jury Instructions" pleading that was signed by counsel for both parties.

On October 26, 2021, counsel for the public guardian filed a motion in limine for an order that "in the event [A.S.] [should fail] to appear at the trial, the trial by jury has been waived." Counsel asserted that A.S. failed to attend hearings concerning the reappointment petition on three separate occasions in June and July 2021, and that if A.S. "fails or refuses to appear at the LPS reappointment trial on November 2, 2021, such non-appearance should be deemed a waiver of trial by jury, pursuant to . . . [s]ection 631(f)(1)."

On November 3, 2021, A.S.'s counsel stated her appearance on the record as counsel for A.S. "who has refused to be present." The trial court heard argument on the public guardian's motion in limine. Counsel for the public guardian asserted that A.S.

3

"was served with a subpoena for her appearance at the trial [on] September 22nd, 2021. She was subpoenaed to appear yesterday, which was the date that was set for this jury trial. [¶] Yesterday, . . . county behavioral health sent a driver to pick up [A.S.], and she refused to come. We sent a driver again this morning . . . , and she again refused to come." "[A.S.] never expressly asked for a jury trial. This was set for a jury trial because she refused to communicate with the court or her attorney about it, and so the attorney had no choice but to not waive the jury trial. But by [A.S.'s] deliberate refusal to come to court, we believe that that constitutes a waiver."

The driver testified under oath that, the day before, he went to A.S.'s "placement in Sacramento to pick her up," but "she refused to come to court." And on the morning he testified, the driver again went to bring A.S. to court, but "she refused to come." On cross-examination, the driver testified that facility staff told him that A.S. refused to accompany him.

Counsel for A.S. argued: "I can't enter into a waiver because I don't know whether or not she wants me to. . . . [¶] . . . I don't think we can waive her right to a jury trial for her. . . . And I think this is an important . . . right, given that there is a deprivation of liberty, and I think we should proceed by way of jury trial."

Responding to the trial court query whether counsel for A.S. "ever met with" A.S., counsel replied: "[N]o. She refused to see me when I showed up for a visit, and she has refused all phone calls." Counsel further explained that on "one particular occasion" A.S. "was willing to speak" with counsel with A.S.'s preferred "social worker present," but counsel "ha[d] not been able to coordinate that."

Counsel for the public guardian replied: "I'm not asking that the court accept [A.S.'s counsel's] waiver of [A.S.'s] right to the jury trial. I'm asking the court to find that [A.S.] herself has waived her right to the jury trial by refusing to come to court. She refused to come to court for three hearings where we were trying to determine whether

4

we were going to set a trial, even though we had provided transportation for her . . . . And now she's refused two days in a row to come to the jury trial."

Citing section 631, subdivision (f)(1), the trial court ruled A.S. waived her jury trial right " 'by failing to appear at the trial.' "  After a bench trial immediately following that ruling, the trial court granted the reappointment petition, ordering A.S.'s conservatorship extended for a year from the trial date, expiring on November 3, 2022.

Beginning on June 9, 2021, and on several occasions thereafter leading up to the November 3, 2021 trial, the trial court ordered "temporary conservatorship" of A.S.

A.S. timely appealed.

## DISCUSSION

### I

#### *The Right to a Jury Trial*

A.S. argues the trial court "erred when it determined that A.S. waived her right to a jury trial when she did not appear despite the court's failure to advise her of her right to a jury trial in the first place."  The public guardian argues the trial court "properly found that . . .  [A.S.] waived her right to a jury trial" as A.S. "prevented the court from providing her with an oral advisement" of the right.

We conclude the trial court did not err when it ruled that A.S. forfeited her statutory right to a jury trial under section 631, subdivision (f)(1).

Probate Code section 1828, subdivision (a) provides:  "Except as provided in subdivision (c), *before the establishment of a conservatorship* of the person or estate, or both, *the court shall inform the proposed conservatee* of all of the following:  [¶] . . . [¶] (6) The proposed conservatee has the *right* to oppose the proceeding, to have the matter of the establishment of the conservatorship *tried by jury* . . . ."  (Prob. Code, § 1828, subd. (a)(6), italics added.)

5

Section 631 provides, in relevant part: "(a) The right to a trial by jury as declared by Section 16 of Article I of the California Constitution shall be preserved to the parties inviolate. In civil cases, a jury may only be waived pursuant to subdivision (f). [¶] . . . [¶] (f) A party waives trial by jury in any of the following ways: (1) *By failing to appear at the trial.* [¶] (2) By written consent filed with the clerk or judge. [¶] (3) By oral consent, in open court, entered in the minutes. [¶] (4) By failing to announce that a jury is required, at the time the cause is first set for trial, if it is set upon notice or stipulation, or within five days after notice of setting if it is set without notice or stipulation. [¶] (5) By failing to timely pay the fee described in subdivision (b), unless another party on the same side of the case has paid that fee. [¶] (6) By failing to deposit with the clerk or judge, at the beginning of the second and each succeeding day's session, the sum provided in subdivision (e)." (§ 631, subds. (a), (f), italics added.)

Of the six scenarios that trigger "waiver" of the right to a jury trial under section 631, two concern express relinquishment of the right (see § 631, subd. (f)(2), (3)), while the other four concern a party's "fail[ure] to" do something (see *id.*, subd. (f)(1), (4)-(6)).

" ' "[W]aiver" means the intentional relinquishment or abandonment of a known right.' [Citations.] Waiver requires an existing right, the waiving party's knowledge of that right, and the party's 'actual intention to relinquish the right.' [Citation.] ' "Waiver always rests upon intent." ' [Citation.]" (*Lynch v. California Coastal Com.* (2017) 3 Cal.5th 470, 475.) Waiver "differs from the related concept of forfeiture . . . . [Citation.] Although the distinctions between waiver . . . and forfeiture can be significant, the terms are not always used with care. 'As we have observed previously, forfeiture results from the failure to invoke a right, while waiver denotes an express relinquishment of a known right; the two are not the same.' " (*Id.* at p. 476.)

While "[t]he parties and court[ ] below have analyzed the issue here in terms of waiver," "the more accurate term to describe the effect of [A.S.'s] actions is . . . forfeiture." (*Lynch v. California Coastal Com., supra*, 3 Cal.5th at p. 476.)

6

This is so because it is undisputed that the trial court never personally advised A.S. of her statutory right to a jury trial. Having never been so advised, and absent any indication in the record that A.S. knew she had that right, A.S. could not have "waived" her right to a jury trial in the sense described by *Lynch*. But, as our Supreme Court explained, one can *forfeit* a right even without knowledge of its existence, and without expressly relinquishing it.

Here, the question is whether—under the LPS conservatorship statutory framework—the trial court was required to personally advise A.S. of her right to a jury trial before deeming that right *forfeited* (pursuant to § 631) by A.S.'s failure to appear at trial. (Cf. *Grafton Partners v. Superior Court* (2005) 36 Cal.4th 944, 951 [§ 631 provides "six means by which the right to jury trial may be *forfeited or waived*, including failure to appear at trial" (italics added)].) It was not.

Our analysis of the issue requires a combined reading of provisions of the Welfare and Institutions Code, the Probate Code, the Code of Civil Procedure, and case law analyzing those provisions.

"The LPS Act governs the involuntary detention, evaluation, and treatment of persons who, as a result of mental disorder, are dangerous or gravely disabled. ([Welf. & Inst. Code,] § 5150 et seq.) The Act authorizes the superior court to appoint a conservator of the person for one who is determined to be gravely disabled [citation], so that he or she may receive individualized treatment, supervision, and placement [citation]. As defined by the Act, a person is 'gravely disabled' if, as a result of a mental disorder, the person 'is unable to provide for his or her basic personal needs for food, clothing, or shelter.' [Citation.]" (*Conservatorship of John L.* (2010) 48 Cal.4th 131, 142 (*John L.*).)

"The procedures for establishing a conservatorship include a number of requirements pertaining to notice, hearing and trial rights, and other matters," including a proposed conservatee's " 'right to demand a court or jury trial on the issue whether he or

7

she is gravely disabled,' . . . . ([Welf. & Inst. Code,] § 5350, subd. (d).) The party seeking imposition of the conservatorship must prove the proposed conservatee's grave disability beyond a reasonable doubt, and a jury verdict finding such disability must be unanimous. [Citation.] An LPS conservatorship automatically terminates after one year, and reappointment of the conservator must be sought by petition. ([Welf. & Inst. Code,] § 5361.)" (*John L.*, *supra*, 48 Cal.4th at p. 143.)

"In construing the [LPS] Act, our goal is to ascertain and effectuate the Legislature's intent. [Citations.] [¶] We start by observing that the LPS Act makes no express mention of any specific requirement for the presence of a proposed conservatee at a hearing to establish a conservatorship of the person. [Welfare and Institutions Code] [s]ection 5350, however, mandates that LPS conservatorships shall be established pursuant to the procedure set forth in the Probate Code, subject to certain listed exceptions. As pertinent here: 'The procedure for establishing . . . a conservatorship under this chapter shall be the same as that provided in Division 4 . . . of the Probate Code, *except as follows*: [¶] . . . [¶]' " (*John L.*, *supra*, 48 Cal.4th at pp. 143-144, quoting Welf. & Inst. Code, § 5350, first italics added, second italics in original.)

"In providing that the procedure set forth in division 4 of the Probate Code shall apply in establishing LPS conservatorships absent a statutory conflict, Welfare and Institutions Code section 5350 plainly requires the operation of Probate Code section 1827, which provides in full: 'The court shall hear and determine the matter of the establishment of the conservatorship *according to the law and procedure relating to the trial of civil actions*, *including trial by jury if demanded by the proposed conservatee*.' (Italics added.) While proceedings under the LPS Act are already commonly viewed as being civil in nature [citation], Probate Code section 1827 makes it all the more clear that *the laws of civil procedure apply in LPS conservatorship proceedings*. [Citation.]" (*John L.*, *supra*, 48 Cal.4th at p. 147, first italics in original, second italics added.)

Regarding LPS Act jury trials, Welfare and Institutions Code section 5350, subdivision (d) provides an exception to division 4 of the Probate Code's general rules, providing, in pertinent part: "(1) The person for whom conservatorship is sought shall have the right to demand a court or jury trial on the issue of whether he or she is gravely disabled. . . . [¶] (2) Court or jury trial shall commence within 10 days of the date of the demand, except that the court shall continue the trial date for a period not to exceed 15 days upon the request of counsel for the proposed conservatee. [¶] (3) This right shall also apply in subsequent proceedings to reestablish conservatorship." (Welf. & Inst. Code, § 5350, subd. (d).)

In *Conservatorship of John D.* (2014) 224 Cal.App.4th 410 (*John D.*), a panel of this court held that "the Legislature did not intend the . . . section 631 requirements for posting jury fees to apply to persons who are the subject of an LPS petition for conservatorship." (*Id.* at p. 421.) The panel reasoned that Welfare and Institutions Code section 5350, subdivision (d)'s language reflected that "the Legislature has provided a self-contained procedure for demanding a jury trial in LPS conservatorship cases and thus, expressly excluded such cases from the provisions of . . . section 631," as "the requirement that the LPS jury trial commence within 10 days of the demand for jury trial is inconsistent with the 25-calendar-day deadline for posting the advance jury fee in Code of Civil Procedure former section 631, subdivision (b)." (*John D.,* at p. 421, italics omitted; *id.* at p. 422 ["because of the loss of liberty, stigmatization and the public interests promoted by the statutory scheme, including public safety, and the fact that the procedure for demanding LPS jury trials is one of the exceptions to the application of the Probate Code and the Code of Civil Procedure, we do not think the Legislature intended the entitlement to a jury trial in LPS matters be conditioned on the payment of jury fees"].)

Here, in contrast to the question presented in *John D.*, language in Welfare and Institutions Code section 5350, subdivision (d) reflects *no* particular "self-contained

9

procedure" regarding *forfeiture* of the jury trial right. In other words, in the language of our Supreme Court's decision in *John L.*, because "the LPS Act makes no express mention of any specific requirement for" forfeiture of a proposed conservatee's statutory jury trial right (*John L.*, *supra*, 48 Cal.4th at pp. 143), the "laws of civil procedure"— including section 631, subdivision (f)(1)—"appl[ied] in [A.S.'s] LPS conservatorship proceeding[ ]." (*John L.,* at p. 147.)

A.S. does not dispute that, in November 2021, she "fail[ed] to appear at the trial." (§ 631, subd. (f)(1).) Indeed, trial court minute orders, sworn testimony by the driver who unsuccessfully sought to bring A.S. to trial on two consecutive days, and A.S.'s attorney's representations in open court, indicated that A.S. purposefully refused to participate in the conservatorship proceeding, including appearing at trial. Accordingly, the trial court did not err in applying section 631, subdivision (f)(1) and ruling that A.S. thereby forfeited her statutory right to a jury trial. (Cf. *Sweeney v. Stanford* (1882) 60 Cal.362, 365-366 [discussing earlier version of § 631, and explaining that in the "common law action" at issue "the right of trial by jury existed unless it was waived"; but "[i]f the case had been put on the jury calendar . . . and if, when called on that calendar for trial, the defendant had *failed to appear*, there would have been a waiver of the right of trial by jury" (italics added)].)

A.S. argues that *Conservatorship of Roulet* (1979) 23 Cal.3d 219, 235 stands for the proposition that the LPS jury trial right, in and of itself, has a constitutional dimension. We disagree. *Roulet* stands for the proposition that—*when* there is an LPS jury trial—the jury must make its findings unanimously, and beyond a reasonable doubt. (*Roulet,* at p. 235 ["The due process clause of the California Constitution requires that proof beyond a reasonable doubt and a unanimous jury verdict be applied to conservatorship proceedings under the LPS Act"].) There is no constitutional right to a jury trial in LPS proceedings. (See *Conservatorship of Maldonado* (1985) 173 Cal.App.3d 144, 147 [Because "[t]he constitutional right to a jury trial exists only

10

with respect to those actions in which the right existed at common law at the time the California Constitution was adopted," "[s]ince conservatorship proceedings were unknown to the common law, the right to a jury trial therein exists only as provided by statute" (italics omitted)].)

A.S. also argues that "the *only* reasonable reading of . . . section 631, subdivision (f)(1) is that a party who waives jury trial by not showing up for the trial is a party who had previously invoked his or her right to a jury trial." (Italics added.) Accordingly, A.S. argues, because the trial court "never advised [her] of her right to a jury trial . . . it was premature to . . . conclud[e] that [A.S] had . . . waived that right." We disagree.

The reasonable reading of section 631, subdivision (f)(1) that we adopt is that, in light of the principle that trial courts in California have "the inherent authority and responsibility to fairly and efficiently administer all of the judicial proceedings that are pending before it" (*People v. Engram* (2010) 50 Cal.4th 1131, 1146)—including " 'the power . . . to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants,' " a calculus that " 'calls for the exercise of judgment, which must weigh competing interests and maintain an even balance' " (*ibid*.)—the statute permits a trial court to deem forfeited a proposed conservatee's right to a jury trial for failure to appear at trial if the conservatee's failure to appear results from a refusal to appear. (Cf. *In re Baird* (1957) 150 Cal.App.2d 561, 568 [quoting with approval "language in *Diaz v. United States* [(1912)] 223 U.S. 442, dealing with one . . . who deliberately and voluntarily refuses to present himself for trial on the day fixed," which language explains that " ' "[t]he question is one of broad public policy, whether" ' " a litigant " ' "can with impunity defy the processes of that law, paralyze the proceedings of courts and juries, and turn them into a solemn farce" ' "].)

Probate Code section 1828, subdivision (a)(6)'s requirement that a trial court "inform the proposed conservatee" of her right to a jury trial "before the establishment of a conservatorship," also must be construed in light of that bedrock principle.

11

Accordingly, to the extent there is any tension between (a) Probate Code section 1828, subdivision (a)(6) on the one hand, and (b) section 631, subdivision (f)(1) and the principle of a trial court's inherent authority to control the disposition of the causes on its docket with economy on the other hand, "constitutional separation-of-powers considerations" militate *against* an interpretation of Probate Code section 1828, subdivision (a)(6) that might "strip a trial court of the ultimate control over the cases within its jurisdiction." (*People v. Engram*, *supra*, 50 Cal.4th at p. 1152; *ibid.* ["we conclude that the [statute at issue] cannot properly be interpreted to strip a trial court of the ultimate control over the cases within its jurisdiction"; and "in light of . . . constitutional separation-of-powers considerations . . . we find it abundantly clear that the provisions of [the statute at issue] cannot properly be interpreted to require a trial court completely to forgo or abandon consideration of all civil cases or proceedings over an extended period of time" (italics omitted)].)

If a proposed conservatee *refuses* to appear at pretrial proceedings and trial (as substantial evidence here indicates), the trial court will be unable to inform her of her right to a jury trial. But in light of the authorities discussed above, such a refusal should not be permitted to paralyze trial proceedings regarding the proposed conservatorship.

Accordingly, this claim is unpersuasive.

## II

### *Due Process*

A.S. argues that "[d]epriving [her] of a jury trial without advising her" of her right to a jury trial "and then deeming that right waived in her absence violated A.S.'s right to due process." The public guardian disagrees, arguing that—because A.S. "repeated[ly] refus[ed] to participate in the proceedings"—the trial court "lacked the ability . . . to advise [A.S.] of her right to a jury trial," and therefore did not violate her due process rights.

12

Consistent with the recent decision in *Conservatorship of C.O.* (2021) 71 Cal.App.5th 894 (review den. Mar. 9, 2022, S272328), we follow the path indicated by our Supreme Court in *John L.*, and conclude that due process protections built into the LPS statutory scheme provide sufficient procedural protections to proposed conservatees " '*without the need to impose additional waiver-related requirements.*' " (*John L., supra*, 48 Cal.4th at p. 154, italics added; see *Conservatorship of C.O.*, at pp. 914-915 [rejecting argument that "a trial court's failure to obtain a personal waiver on the record of the proposed conservatee's right to a jury trial violates a constitutional due process right" in light of *John L.*'s discussion of the " ' "several layers of important safeguards" . . . built into' the LPS conservatorship system to guard against erroneous conclusions," including " 'prompt remedial relief' after a conservatorship has been established, such as . . . the conservatee's right during the one-year period of the LPS conservatorship to twice petition for rehearing as to [her] status as a conservatee ([Welf. & Inst. Code,] § 5364)"].)

Accordingly, this claim is unpersuasive.

III

*Extension of the Conservatorship*

A.S. argues the trial court erred under the LPS statutory framework when it "extended A.S.'s LPS conservatorship from the date of the bench trial . . . instead of from the date the preceding conservatorship automatically expired." The public guardian argues the trial court did not err, and that if it did, any error was harmless.

Welfare and Institutions Code section 5361 provides, in relevant part: "Conservatorship initiated pursuant to this chapter shall automatically terminate one year after the appointment of the conservator by the superior court. *The period of service of a temporary conservator shall not be included in the one-year period*. . . . If upon the termination of an initial or a succeeding period of conservatorship the conservator determines that conservatorship is still required, he may petition the superior court for his

13

reappointment as conservator for a succeeding one-year period. . . . [¶] Any facility in which a conservatee is placed must release the conservatee at his request when the conservatorship terminates. . . . The facility may detain the conservatee after the end of the termination date only if the conservatorship proceedings have not been completed and the court orders the conservatee to be held until the proceedings have been completed." (Welf. & Inst. Code, § 5361, italics added.)

A.S. argues the trial court erred under Welfare and Institutions Code section 5361 by ordering conservatorship to automatically expire on November 3, 2022 (one year from the date of trial) rather than on June 10, 2022 (one year from the date her original conservatorship expired). November 3, 2022 "is 147 days . . . beyond what is properly the one-year automatic termination of the current conservatorship on June 10, 2022," A.S. contends. Accordingly, A.S. argues, we should order the trial court to amend its order reappointing the public guardian so that it "correctly states the termination of . . . A.S.'s current LPS conservatorship as June 10, 2022."

This argument lacks merit, because Welfare and Institutions Code section 5361 *excludes* "[t]he period of service of a temporary conservator" from the "one-year period" of conservatorship (and permits a "facility in which a conservatee is placed" to "detain the conservatee after the end of the termination date . . . until" conservatorship proceedings "have been completed"). Thus, because A.S. was in "temporary" conservatee status between June 10, 2021, and November 3, 2021, the trial court properly did not count that time against A.S.'s second one-year period of conservatorship.

14

DISPOSITION

The judgment is affirmed.

                                                _____

                                                HULL, Acting P. J.

We concur:

_____

DUARTE, J.

_____

HOCH, J.