Filed 6/13/24  MGP IX Properties v. Towfix CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

|  |  |
|---|---|
| MGP IX PROPERTIES, LLC, | |
| Plaintiff and Respondent, | E079918 |
| v. | (Super. Ct. No. CVSW2001012) |
| AHMAD A. TOWFIX, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Raquel A. Marquez, Judge.  Affirmed.

Ahmad A. Towfix, in pro. per., for Defendant and Appellant.

The Duringer Law Group, Stephen C. Duringer and Edward L. Laird, III, for Plaintiff and Respondent.

# I.

## INTRODUCTION

Pro. per. defendant and appellant Ahmad Towfik dba Arraml Café entered into a five-year lease agreement with plaintiff and respondent MGP IX Properties, LLC, for commercial retail space in a shopping center. Towfik vacated the premises before the lease expired, so MGP sued him for breach of contract. After a bench trial, the trial court found Towfik breached the agreement, awarded MGP about $75,500 in damages, and entered judgment for MGP. Towfik appeals, and we affirm.

# II.

## FACTUAL AND PROCEDURAL BACKGROUND

In July 2017, Towfik signed a 60-month lease with MGP to rent a retail space where he operated a café. The lease began in October 2017 and was scheduled to end in October 2022. Towfik, however, stopped paying rent in the fall of 2019 and vacated the premises in January 2020, and MGP did not have a new tenant for the space until June 2021.

MGP thus sued Towfik for breach of contract, seeking over $100,000 in damages for unpaid rent, rent owed for the remainder of the lease, and other expenses. Towfik answered the complaint with a general denial without any affirmative defenses.

Without any other significant proceedings, the case went to a bench trial. MGP sought about $92,000 in damages: $8,166.23 for rent Towfik owed when he vacated the premises and $83,717.07 for the remaining rent and expense charges Towfik owed for the

remainder of the lease (which included a reduction of $10,987.50 in rent received by the new tenant).

Towfik argued, however, that the damages should be offset due to MGP's multiple alleged violations of the lease before he vacated the premises. At the start of trial, Towfik stipulated that his trial brief and its supporting documents would "suffice as his testimony." After MGP's attorney made an opening statement, the trial court asked if Towfik wanted to make an opening statement or add anything beyond his trial brief. Towfik said he wanted to address two issues, and agreed to do so during the trial.

The trial then began with the testimony of the space's property manager, Erika Abrille. Abrille testified at length about MGP's claimed damages. After Towfik cross-examined her, he briefly testified. When MGP finished cross-examining Towfik, the trial court asked him if there was anything else he wanted to add or whether he rested his case. Towfik stated he rested, but MGP called Abrille for brief rebuttal testimony, which was subject to Towfik's cross-examination.

The trial court asked the parties if they were resting. They stated that they were and had nothing further.

The trial court then stated its tentative ruling. The court explained that, based on Abrille's "very honest" and credible testimony, MGP was entitled to $75,564.53 in damages. The court found that Towfik was not entitled to an offset because his reasons—MGP's alleged violations of the lease—occurred before he vacated the space.

3

MGP submitted to the court's tentative, but Towfik disputed it at length for a variety of reasons. The court stopped Towfik because the court had to decide whether to keep the courtroom past the lunch break, but explained that Towfik could come back after lunch and continue his argument. He said he had only "just [a] few words" and would "wrap it up." After Towfik finished, the court explained that it would adopt its tentative ruling and enter judgment for MGP. Towfik did not object, and the trial concluded.

The court then entered judgment for MGP for $75,564.53. Towfik timely appealed.

## III.

## DISCUSSION

Towfik argues the judgment must be reversed for four reasons: (1) the trial court failed to offset MGP's damages due to its repeated breaches of the lease, (2) the court failed to offset MGP's damages for the costs associated with an American with Disabilities Act (ADA) lawsuit concerning the shopping center's common areas, (3) MGP failed to provide a "credible witness" concerning its efforts to mitigate its damages and failed to provide an expert "to explain [its] mitigation damages", and (4) the trial court erroneously allowed Abrille to testify because MGP did not disclose her as a witness 25 days before trial. We reject each argument.

4

1. *Offsets*

Towfik contends MGP breached the lease in multiple ways, including by providing a "lack of security" at the shopping center, an "invasion of vermin" at the premises (a snake), MGP's ADA violations, a "break-in by [an] intruder," a broken glass at the premises, the "constant presence of homeless trespassers," and other unspecified breaches. Because of these alleged breaches, Towfik contends his business became "untenable," thus justifying an offset. We disagree.

We first reject Towfik's argument that the trial court denied him the opportunity to establish these alleged breaches. The portion of the reporter's transcript Towfik cites to support this argument concerns MGP's relevancy objection to his questioning Abrille about other tenants at the shopping center vacating their businesses. The court asked Towfik if there was anything in the lease that excused him from paying rent if there was insufficient occupancy in the shopping center, but he could not point to any such provision in the lease and moved on to questioning Abrille about another topic. Because evidence of the shopping center's occupancy was irrelevant, the court therefore correctly sustained MGP's relevancy objection to Towfik's argument and precluded him from asking Abrille about other tenants leaving.

As for MGP's alleged breaches, the lease provides that MGP would not be considered to be in breach (default) of the lease unless Towfik notified MGP in writing of the alleged breach and MGP failed to remedy the breach within 30 days. But there is no evidence that Towfik ever notified MGP in writing that MGP had breached the lease.

Although Towfik notified MGP about a shattered window, Towfik thanked Abrille in an email for fixing it. In that same email, Towfik said he saw a snake that was hiding in a common area and asked that maintenance "take care of it," but there is no evidence MGP failed to do so, nor is there any evidence that the snake caused Towfik any harm.

Similarly, although Towfik emailed MGP about an ADA lawsuit against him arising from the premises about two weeks before he vacated, the email cannot be construed as a notice to MGP that it was breaching the lease. Instead, Towfik mentioned the lawsuit only as the reason why he could not get a business loan, which he needed because the café was losing about $6,000 per month. In any event, MGP told Towfik that MGP "will handle" the ADA lawsuit, and he admitted at trial that he never paid anything to the ADA plaintiff.

In sum, there is no evidence that Towfik notified MGP of any purported breach of the lease as required by the lease, that MGP failed to remedy the breach within 30 days as required by the lease, or that any purported breach caused him damages. The trial court thus properly declined to offset MGP's damages.

2. *ADA Lawsuit*

Towfik next expands on his argument that the trial court should have offset MGP's damages because of the ADA lawsuit. Towfik relies on *Botosan v. Paul McNally Realty* (9th Cir. 2000) 216 F.3d 827, which held that a shopping center's owner was jointly liable for an ADA violation arising from the center's parking lot, despite the lease agreement saying the tenant was liable.

6

That case has no application here.  As explained above, MGP took full responsibility for the ADA lawsuit, and there is no evidence that Towfik had to pay any costs for the lawsuit or damages to the ADA plaintiff.  The ADA lawsuit thus provided no grounds for an offset.

3. *Mitigation*

Towfik next contends that the trial court erred because MGP failed to provide a "credible witness to prove or disprove [its] reasonable efforts" to re-lease the premises in order to mitigate its damages.  But, as the lessee who breached the lease and abandoned the property before the lease terminated, Towfik had the burden to prove what damages in lost rent, if any, MGP could have reasonably avoided.  (See Civ. Code, § 1951.2, subd. (a)(2)-(3).)[1]  MGP had no obligation to put on any evidence concerning its mitigation efforts.

In any event, Abrille testified extensively about MGP's mitigation efforts.  Abrille explained that MGP always tries to find new tenants when a tenant abandons a property in violation of a lease, and MGP did so when Towfik abandoned the premises.

---

[1]  These provisions state in full:  "(a) Except as otherwise provided in [s]ection 1951.4, if a lessee of real property breaches the lease and abandons the property before the end of the term or if his right to possession is terminated by the lessor because of a breach of the lease, the lease terminates.  Upon such termination, the lessor may recover from the lessee:  [¶] . . . [¶]  (2) The worth at the time of award of the amount by which the unpaid rent which would have been earned after termination until the time of award exceeds the amount of such rental loss that the lessee proves could have been reasonably avoided;  [¶]  (3) Subject to subdivision (c), the worth at the time of award of the amount by which the unpaid rent for the balance of the term after the time of award exceeds the amount of such rental loss that the lessee proves could be reasonably avoided."

7

According to Abrille, MGP has a standard practice in these situations, which includes listing the property on rental websites and working with brokers. Abrille was aware that the property was listed on a specific website that most brokers are familiar with. In Abrille's view, MGP "did everything that they could to find a new tenant" and "did the best they could" given challenges presented by the COVID-19 pandemic.

The trial court found Abrille highly credible and gave "a lot of weight" to her testimony without qualification. This means that that the trial court believed her testimony concerning MGP's mitigation efforts, as the court was entitled to do. See *Estate of Sapp* (2019) 36 Cal.App.5th 86, 106 ["'The trial court was the trier of fact and the sole judge of the credibility of witnesses.'"]; *People v. Sanchez* (2003) 113 Cal.App.4th 325, 330 [assessing witness credibility is "the exclusive function of the trier of fact"].) The court was also entitled to find that Abrille's testimony was sufficient for to find that MGP's mitigation efforts were sufficient. (See *In re Marriage of Fregoso & Hernandez* (2016) 5 Cal.App.5th 698, 703 ["The testimony of one witness, even that of a party, may constitute substantial evidence."].) As a result, the trial court properly declined to offset MGP's damages for allegedly failing to mitigate its losses.

Finally, we reject Towfik's arguments that Abrille was unqualified to testify as to MGP's mitigation efforts or that expert testimony was required. Towfik never made either argument in the trial court, so they are forfeited on appeal. (See *Lynch v. California Coastal Commission* (2017) 3 Cal.5th 470, 475.)

8

4. *Witness List*

Towfik's last argument is that the trial court violated California Rules of Court, rule 3.1548(b)(2) by allowing Abrille to testify. According to Towfik, that rule required MGP to disclose its witness list to him no later than 25 days before trial, but MGP did not do so until three days before trial.

Rule 3.1548 applies only to voluntary expedited jury trials. The trial in this case, however, was a bench trial. The rule therefore does not apply.

IV.

DISPOSITION

The judgment is affirmed. MGP may recover its costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:

RAMIREZ

P. J.

FIELDS

J.

9