Filed 11/7/22  P. v. Gastelum CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D079642 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. INF1800593) |
| EFRAIN VALLEJO GASTELUM, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Anthony R. Villalobos, Judge.  Affirmed in part, vacated in part, and remanded for resentencing.

Dawn S. Mortazavi, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette Cavalier and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

A jury convicted Efrain Vallejo Gastelum of assault with a semiautomatic weapon, unlawful possession of a firearm, and unlawful possession of ammunition. The jury found true allegations Gastelum personally used a firearm and inflicted great bodily injury in connection with the assault with a semiautomatic weapon count. The trial court sentenced him to a total term of 13 years in prison.

On appeal, Gastelum contends the trial court violated his right of confrontation under the Sixth Amendment to the United States Constitution and Article I, section 15 of the California Constitution by allowing the victim to wear a face mask while testifying against him. On the record before us, we conclude Gastelum has waived the claim and we decline to reach the merits of his constitutional challenge.

However, Gastelum asserts, and the Attorney General concedes, we must remand for resentencing under Assembly Bill No. 124 (2021–2022 Reg. Sess.; Stats. 2021, ch. 695, § 5) (Assembly Bill 124), which the Legislature passed while his appeal was pending.[1] Assembly Bill 124 amended Penal Code[2] section 1170, subdivision (b), to require courts to impose the lower term if the offender was under 26 years of age at the time of the offense, unless the court finds that aggravating circumstances outweigh the mitigating circumstances. Given that Gastelum was 25 years old when he

---

[1] Gastelum highlights that Assembly Bill Nos. 124 and 1540 and Senate Bill No. 567 all concurrently amended Penal Code section 1170, subdivision (b), but we will focus on Assembly Bill 124, which impacted sentencing of youthful offenders. (Pen. Code, § 1170, as amended by Assem. Bill Nos. 124 & 1540 (2021–2022 Reg. Sess.) and Sen. Bill. No. 567 (2021–2022 Reg. Sess.).)

[2] Further undesignated statutory references are to the Penal Code.

2

committed the offenses, we agree the People's concession is proper. Accordingly, we vacate the sentence and remand the matter for resentencing under current section 1170, subdivision (b). In all other respects, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

One evening in March 2018, Gastelum joined two other guests to drink and socialize at B.H.'s home. After some time passed, B.H. accused Gastelum of behaving inappropriately towards a female guest. The two got into a physical altercation during which B.H. grabbed Gastelum's legs, knocked him to the ground, and struck him repeatedly. B.H. then escorted Gastelum out of the house and down a long driveway. In the street near the end of the driveway, Gastelum pulled out a semiautomatic handgun and fired eight shots either at B.H. or at the ground. The first bullet passed through B.H.'s right foot. B.H. ran back to the house and his stepfather called the police. Officers arrested Gastelum nearby and found the handgun in a neighbor's cluster of palm trees.

A jury convicted Gastelum of assault with a semiautomatic firearm against B.H. (§ 245, subd. (b); count 2), unlawful possession of a firearm (§ 29800, subd. (a); count 4), and unlawful possession of ammunition (§ 30305, subd. (a); count 5). In connection with count 2, the jury found true the allegations that he personally used a firearm (§§ 12022.5, subd. (a), and 1192.7, subd. (c)(8)), and inflicted great bodily injury on B.H. (§§ 12022.7, subd. (a), and 1192.7, subd. (c)(8)). The jury acquitted Gastelum of attempted murder (§§ 664, 187, subd. (a); count 1) and assault with a semiautomatic firearm against a second person (§ 245, subd. (b); count 3).

The trial court sentenced Gastelum to a total prison term of 13 years, based on the middle term of six years for the assault, the middle term of four

years for the firearm enhancement, and three years for the great bodily injury enhancement. The court imposed but stayed sentences on the counts of unlawful possession of a firearm and unlawful possession of ammunition, pursuant to section 654. Gastelum timely appealed.

DISCUSSION

I.

*Gastelum Waived His Confrontation Clause Claim*

Gastelum contends the trial court violated his federal and California right of confrontation by allowing B.H. to wear a face mask while testifying against him. The People respond that he has forfeited his claim because defense counsel agreed with the trial court's ruling that B.H. could testify with his face mask. The record is clear: defense counsel objected to the victim testifying with his mask on, but ultimately acquiesced to the trial court's ruling for strategic reasons. The issue was waived, not forfeited.[3]

A. *Additional Background*

Gastelum was tried in May 2021. At that time, the State of California and the Riverside County Superior Court imposed various restrictions for

---

[3] We note Gastelum's opening brief fails to even mention the fact that his trial counsel agreed to the very ruling he now challenges as error. An appellant's opening brief must provide an adequate "summary of the significant facts limited to matters in the record." (Cal. Rules of Court, rule 8.204(a)(2)(C).) Moreover, the appellant must set forth all material evidence, not just evidence favorable to his position. (*See People v. Dougherty* (1982) 138 Cal.App.3d 278, 282.) In his reply to the Attorney General's forfeiture argument, Gastelum barely addresses the significance of counsel's acquiescence. Instead, Gastelum responds by contending that further objection would have been futile. This argument ignores the facts in the record demonstrating that defense counsel discussed the confrontation issue at length with the court. When we consider these facts, it is apparent counsel conceded for strategic, not futility, reasons.

4

public safety in response to the COVID-19 pandemic.  As a result, the trial court closed Gastelum's trial to the public and required everyone in the courtroom to wear masks.  On each day of trial, the court read a history of the COVID-19 pandemic restrictions into the record and found good cause to close court proceedings to the public.  Everyone in the courtroom wore a mask and sat socially distanced from one another.  Counsel were allowed to remove their masks while speaking so long as they remained six feet or more away from others.

When each witness took the stand, the trial judge pointed out that everyone in the courtroom was wearing a mask and sitting more than six feet from the witness; that Plexiglas protected the witness from the bailiff and others; and that the witness could use a court-provided face shield.  The judge then gave the witnesses the option of removing their masks while testifying so the jury could see their facial expressions.  Some witnesses opted to shed their masks, but several declined.  Gastelum also wore a mask throughout the proceedings but repeatedly pulled it down briefly at the court's direction so that witnesses could identify him.

The court followed the same procedures when B.H. took the stand.  In the presence of the jury, the judge highlighted the safety precautions and gave B.H. the option to remove his mask so the jury could see his face while he testified.  In response, B.H. asked, "Am I allowed to keep the mask on?"  The judge told B.H., "You can keep it on if you wish."  But the prosecutor requested on behalf of both parties that B.H. remove his mask, "if the witness is willing."  The court again asked B.H. if he was willing to take the mask off and use the face shield.  B.H. responded, "I would prefer to keep this one on if that's okay."  The court then told the attorneys, "I am going [to] let him keep

5

it on." At this point, defense counsel did not object to B.H. leaving his mask on.

At the noon recess, defense counsel raised the issue outside the presence of the jury. He acknowledged "COVID is still rampant, and it still exists." Defense counsel stated he did not know "what [B.H.'s] reasons are for keeping his mask on," but "assuming it is COVID," counsel argued that Gastelum's right of confrontation mandated the jury and defense be able to see B.H.'s facial expressions while testifying. The court agreed with defense counsel but did not think it could "force" the witness to remove his mask "given . . . the way COVID is now."

When the jury returned and B.H. resumed the witness stand, the court told him they had "a little difficulty" hearing his earlier testimony and asked him to reconsider using the face shield. B.H. responded, "I'd prefer to keep my face covered just because of future retaliation and identifying me. That's my reason." The court responded, "if that's the reason, sir, then I am going to ask you to take off your face mask." When the court told B.H., "I thought it was because of COVID," B.H. said: "Well, of course. That, too." The court sought further clarification. It asked B.H., "what's the main reason, sir?" B.H. responded, "Well, it is COVID as well, of course." The court stated his answer "seem[ed] like an afterthought" and B.H. interjected, "Of course, it is."

At that point, the prosecutor asked for a chambers conference, outside the presence of the jury, and argued the People should be entitled to question B.H. as to why he was afraid. Earlier that morning, the prosecutor had informed defense counsel that B.H. told him a third party had threatened him, and B.H. believed it was related to the case. The prosecutor argued B.H. was "genuinely afraid of the defendant and retaliation, whether that's

6

because he believes that the defendant is a gang member or because the defendant is a gang member." And because the court had inquired about B.H.'s refusal to take the mask off in front of the jury, the prosecutor asserted he was entitled to "inquire as to his motives, essentially, for refusing to take the mask off."[4]

The trial court responded that it felt "kind of stuck here because of COVID," and reiterated it did not believe it could force B.H. to remove his mask. The court told counsel, "So at this point, I am going to let him keep his mask on, and we will just proceed." Defense counsel responded: "I am fine with that." Defense counsel clarified he did not have any information about the third-party threat, and he would be going into cross-examination "blind" if the court allowed the prosecution to ask B.H. about the alleged threat. Defense counsel then stated: "I think we all assumed it was due to COVID and apparently it was something else, and the afterthought was COVID. So I am okay with him keeping his mask on, move on, and keep going."

The prosecutor continued to press the court to allow him to ask B.H. "a couple of questions about him being concerned or afraid for testifying today," "without getting into the details." The court denied the request, telling the prosecutor, "let's not get into that issue." The prosecutor tried again and said he would only ask " 'Is this the only time you have been shot in your life' type questions, as opposed to 'Are you afraid, and that's why you are not removing your mask.' " Defense counsel cautioned that even that question could

---

[4] Although the trial court had previously denied the People's motion in limine to allow testimony regarding Gastelum's alleged gang affiliation, the prosecutor argued B.H.'s unanticipated expression of fear opened the door to that issue.

7

trigger a mistrial because B.H. "obviously wants to say a lot." The court again told the prosecutor, "let's not get into that."

When proceedings resumed in the presence of the jury, the trial court told B.H.: "I understand you said earlier that you have some concern. Normally, that's not something that I allow. However, given that we are in a COVID pandemic, I will allow you to keep your mask on." B.H. remained masked for the remainder of his testimony.

B.    *Gastelum Has Waived His Confrontation Claim*

The People argue Gastelum has forfeited his right to complain that the trial court erred in allowing B.H. to testify with his mask on because defense counsel agreed with the court's ruling. Courts and parties frequently use the terms "forfeiture" and "waiver" interchangeably, but they are distinct legal concepts. A party forfeits the right to challenge a ruling on appeal if it could have objected in the trial court *but did not*. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.) By contrast, "a waiver is the 'intentional relinquishment or abandonment of a known right.'" (*Id.* at p. 1293, fn. 2.) A finding of waiver requires demonstrating the party knew it possessed an existing right and intended to relinquish that right. (*Lynch v. California Coastal Com.* (2017) 3 Cal.5th 470, 475 (*Lynch*).) On the record before us, we conclude Gastelum has waived his confrontation claim, rather than forfeited it as the People have argued.

The People rely on *People v. Reynolds* (2010) 181 Cal.App.4th 1402, 1408, which held, "[a] party forfeits his or her right to attack error by implicitly agreeing or acquiescing at trial to the procedure objected to on appeal." *Reynolds* cites *Mesecher v. County of San Diego* (1992) 9 Cal.App.4th 1677, 1685–1686 (*Mesecher*), for this proposition. But in *Mesecher*, this court explained that " 'an appellant may *waive* his right to attack error by

8

expressly or impliedly agreeing at trial to the ruling or procedure objected to on appeal.' " (*Mesecher*, at p. 1685, italics added.)  The court's application of waiver, not forfeiture, was grounded in the recognition that attorneys make strategic choices during trial.  (*Id.* at p. 1686.)  Our adversarial system affords significant deference to "attorney creativity," and appellate courts generally will not second guess counsel's tactical choices.  (*Ibid.*)  But "where a deliberate trial strategy results in an outcome disappointing to the advocate, the lawyer may not use that tactical decision as the basis to claim prejudicial error."  (*Ibid.*)  Such is the case here.

Gastelum's trial attorney did not fail to object to B.H. wearing a mask. He promptly objected to B.H. wearing a mask, and did so specifically on the grounds of Gastelum's constitutional right of confrontation.  He argued it was "vitally important for the jury and defense to see [B.H.'s] expressions as he is testifying."  He further asserted Gastelum's "right to confront under the constitution" mandated that B.H. remove the mask.  Thus, there is no ambiguity that the defense understood Gastelum's constitutional right of confrontation was at issue.

Knowing Gastelum possessed an existing right of confrontation, the defense subsequently relinquished that right when it acquiesced to the court's ruling permitting B.H. to testify with the mask on.  "The intention [to relinquish a known right] may be express, based on the waiving party's words, or implied, based on conduct that is ' "so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished." ' " (*Lynch, supra,* 3 Cal.5th at p. 475.)  Here, the intention was express.

As defense counsel acknowledged, no one anticipated that B.H. would say (in front of the jury) that he wanted to wear a mask because he was

afraid of retaliation; they "all [had] assumed it was due to COVID." Thus, the prosecution had valid grounds to request permission to examine B.H.'s reasons for refusing the court's invitation to testify without a mask, in part to help the jury understand his demeanor on the witness stand. When the court stated, "at this point, I am going to let him keep his mask on, and we will just proceed," defense counsel did not continue to press his objection to the ruling on the grounds of Gastelum's right of confrontation. Rather, defense counsel said: "*I am fine with that*." (Italics added.) If not already pellucidly clear, defense counsel then said: "So *I am okay with him keeping his mask on*, move on, and keep going." (Italics added.)

The decision to abandon Gastelum's objection to the mask on confrontation grounds was strategic. The defense objected to the prosecutor's request that the People be allowed to inquire about B.H.'s reasons for being afraid, and specifically about the third-party threat he had allegedly received at trial. Defense counsel acknowledged "[a]pparently, there has been some retaliation or some ID issues" and "it looks bad for Mr. Gastelum." Thus, the defense made the tactical choice to relinquish further assertion of Gastelum's right of confrontation to avoid what might have been a worse outcome— B.H.'s testimony he was threatened by a third party and that he believed the threat was related to the case.[5] "[W]here a deliberate trial strategy results in an outcome disappointing to the advocate, the lawyer may not use that

_____

[5]    And, unlike some constitutional rights, the right to confront a particular witness is one that counsel has authority to waive for strategic reasons without the accused's express consent. (See *Taylor v. Illinois* (1988) 484 U.S. 400, 418 [recognizing that clients must accept the consequences of their attorney's decisions to forgo cross-examination, not put certain witnesses on the stand, and otherwise manage trial choices because "[t]he adversary process could not function effectively if every tactical decision required client approval"].)

tactical decision as the basis to claim prejudicial error." (*Mesecher*, *supra*, 9 Cal.App.4th at p. 1686.) As in *Mesecher*, Gastelum has " 'waive[d] his right to attack error by expressly . . . agreeing at trial to the ruling or procedure objected to on appeal.' " (*Id*. at p. 1685.)

## II.

### *The Matter Shall Be Remanded for Resentencing Pursuant to Section 1170, Subdivision (b), as Amended*

The trial court selected count 2 (§ 245, subd. (b)) as the principal count and sentenced Gastelum to the middle term of six years. It also imposed the middle term of four years for the firearm enhancement (§§ 12022.5, subd. (a) and 1192.7, subd. (c)(8)), plus three years for the great bodily injury enhancement (§§ 12022.7, subd. (a) and 1192.7, subd. (c)(8)). The court sentenced Gastelum to one-third the middle term for eight months on counts 4, possession of a firearm by a prohibited person (§ 29800, subd. (a)), and count 5, possession of ammunition by a prohibited person (§ 30305, subd. (a)), but stayed both sentences pursuant to section 654.

At the time the court sentenced Gastelum, section 1170, former subdivision (b), left it to the sentencing court's "sound discretion" to select which of the three possible terms "best serve[d] the interests of justice." (§ 1170, former subd. (b), as amended by Stats. 2018, ch. 1001 (Assem. Bill No. 2942) § 1.) In selecting the middle term for count 2, the court explained the low term was not appropriate given Gastelum's three prior felony convictions and the fact that someone was injured. The court also based its sentencing determination on Gastelum's inability to stay in school, maintain a job, or interact well with others. Although the prosecution argued for the upper term on count 2, the court acknowledged as mitigating factors that

11

Gastelum was only 25 years old when the incident occurred and had left the victim's house before pulling out his gun.

While the present appeal was pending, the Legislature enacted Assembly Bill 124, which made significant amendments to section 1170, subdivision (b). (Stats. 2021, ch. 695, § 5.) Effective January 1, 2022, "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if . . . [t]he person is a youth, or was a youth as defined under subdivision (b) of Section 1016.7 at the time of the commission of the offense." (§ 1170, subd. (b)(6).) Section 1016.7 defines a youth as "any person under 26 years of age on the date the offense was committed."

On appeal, Gastelum contends the amendments to section 1170, subdivision (b), implemented by Assembly Bill 124 apply retroactively to him. He requests that we remand to the trial court for resentencing under the new law. The People correctly concede the amendments are retroactive under *In re Estrada* (1965) 63 Cal.2d 740. Absent evidence to the contrary, we presume under the *Estrada* rule that statutes that ameliorate the punishment for criminal conduct apply retroactively to all defendants whose judgments are not final on the statute's operative date. (*People v. Brown* (2012) 54 Cal.4th 314, 323.) This includes statutes that reduce the possible punishment for a class of criminal defendants. (*People v. Frahs* (2020) 9 Cal.5th 618, 631–632.) Assembly Bill 124 lowered the default term courts should consider when sentencing youthful offenders, thus rendering it ameliorative in nature. There also is no indication the Legislature intended the recent amendments to section 1170 to apply only prospectively. We thus infer under the *Estrada* rule that the Legislature

12

intended the amendments to apply retroactively to all nonfinal convictions on appeal.

Even though the trial court considered Gastelum's youth as well as other mitigating and aggravating factors, the court stated expressly that it was not considering the lower term. Accordingly, the trial court may weigh these factors differently in exercising its discretion on remand. Thus, the People's concession that Gastelum is entitled to remand for the court to exercise its discretion under amended section 1170, subdivision (b), is also proper. We therefore remand the matter for resentencing consistent with the current version of section 1170, subdivision (b). We express no views on the outcome of resentencing.

## DISPOSITION

Gastelum's sentence is vacated. The matter is remanded to the trial court for resentencing. The judgment is affirmed in all other respects.


DO, J.


WE CONCUR:


IRION, Acting P. J.


DATO, J.


13