# IN THE SUPREME COURT OF CALIFORNIA

PETER QUACH,

Plaintiff and Respondent,

v.

CALIFORNIA COMMERCE CLUB, INC.,

Defendant and Appellant.

S275121

Second Appellate District, Division One
B310458

Los Angeles County Superior Court
19STCV42445

July 25, 2024

Justice Groban authored the opinion of the Court, in which Chief Justice Guerrero and Justices Corrigan, Liu, Kruger, Jenkins, and Evans concurred.

QUACH v. CALIFORNIA COMMERCE CLUB, INC.

S275121

Opinion of the Court by Groban, J.

Private parties may agree to resolve their disputes in arbitration rather than in court. If a party to an arbitration agreement files a complaint in court raising a claim covered by the agreement, the defendant can file a motion asking the court to stay the lawsuit and send the dispute to arbitration. A defendant who instead litigates the case risks losing the contractual right to compel arbitration.

One way a contractual right may be lost is by waiver. Outside the arbitration context, a California court will find waiver when the party seeking to enforce a known contractual right has intentionally relinquished or abandoned that right. (*Lynch v. California Coastal Com.* (2017) 3 Cal.5th 470, 475 (*Lynch*).) In the arbitration context, however, our cases have added a requirement: to find waiver, we have required that the party seeking to avoid arbitration show prejudice. (See *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1203 (*St. Agnes*).) To explain our adoption of this additional, arbitration-specific requirement, we relied on a policy favoring arbitration over litigation as a form of dispute resolution. (*Id.* at p. 1204.)

Until recently, most federal appellate courts similarly applied an arbitration-specific rule that required a showing of prejudice to establish waiver. Our California rule is based upon these federal cases. In *Morgan v. Sundance, Inc.* (2022) 596 U.S.

1

411 (*Morgan*), the United States Supreme Court rejected this rule. *Morgan* clarified that the federal " 'policy favoring arbitration' " is about putting arbitration agreements on equal footing with other contracts, not about favoring arbitration. (*Id.* at p. 418.) Accordingly, the Supreme Court held that, under federal law, a court must apply the same rules that apply to any other contract when determining whether a party to an arbitration agreement has lost the right to enforce the agreement. (*Ibid.*)

Because our state-law arbitration-specific prejudice requirement is based upon the federal precedent that *Morgan* overruled, we now abrogate it. California policy, like federal policy, puts arbitration agreements on equal footing with other types of contracts. Accordingly, under California law, as under federal law, a court should apply the same principles that apply to other contracts to determine whether the party seeking to enforce an arbitration agreement has waived its right to do so. The Court of Appeal below applied an arbitration-specific prejudice requirement to overrule the trial court's order denying California Commerce Club's motion to compel arbitration. We now reverse.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Peter Quach filed this suit in 2018, after California Commerce Club (Commerce Club), which operated the casino where Quach had worked for almost 30 years, terminated his employment. Quach's complaint alleges claims for wrongful termination, age discrimination, retaliation, and harassment and demands a jury trial.

Before Quach filed his complaint, Commerce Club provided him with a copy of the signature page of a form

2

arbitration agreement he had signed in 2015, while he was working at the casino. The agreement provided for binding arbitration of employment-related disputes.

Rather than filing a motion to compel arbitration, Commerce Club answered Quach's complaint and initiated discovery, propounding form interrogatories, special interrogatories, requests for admission, and a request for production of documents. In its answer, Commerce Club asserted as an "affirmative defense" that Quach "should be compelled to arbitrate" any claims he had agreed to arbitrate. However, Commerce Club's counsel did not raise the issue of arbitration with Quach's counsel or with the court in any other way. On the form Commerce Club submitted as its first case management conference statement, it requested a jury trial, did not check the box indicating it was willing to participate in "binding private arbitration," and did not list a motion to compel arbitration in the space provided for listing motions it expected to file before trial, instead indicating that it only intended to file a "dispositive motion." (See JCC form CM-110, July 1, 2011.)

At the case management conference, the court set a trial date. Thereafter, both sides posted jury fees and continued to engage in discovery. Commerce Club responded to Quach's initial discovery requests and propounded a second set of special interrogatories. In response to a discovery request, Commerce Club again provided Quach a copy of the signed signature page of his arbitration agreement. Although trial court proceedings were delayed due to the COVID-19 pandemic, Commerce Club continued to actively participate in discovery, engaging in meet and confer over discovery disputes and taking Quach's deposition by videoconference for a full day.

Then — 13 months after Quach filed his lawsuit — Commerce Club filed a motion to compel arbitration under the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (FAA) "and/or" the California Arbitration Act, Code of Civil Procedure, sections 1281 et seq. (CAA).[1] Attempting to explain its delay, Commerce Club asserted that it had just located a complete copy of Quach's arbitration agreement. It argued that Quach was not prejudiced by the delay because there had been only "minimal discovery" due to the pandemic's impact on Commerce Club's access to information and witnesses.

Quach opposed the motion, arguing that Commerce Club had waived its contractual right to compel arbitration. He pointed out that Commerce Club had provided him a copy of the signed signature page of his arbitration agreement before he even filed his lawsuit and that the first page of the two-page agreement contained boilerplate language that was the same in all the arbitration agreements Commerce Club had its employees sign in 2015. Quach argued that Commerce Club's delay was prejudicial because Quach had spent significant time and money on the litigation and had lost the advantage of arbitration as a way to obtain an expedited resolution of the dispute.

The trial court denied Commerce Club's motion. It found that Commerce Club "knew of its right to compel arbitration" and instead of moving to compel arbitration, propounded a "large amount" of written discovery, spent "significant" time meeting and conferring "over many months," and took Quach's

_____

[1] All subsequent statutory references are to the California Code of Civil Procedure unless otherwise specified.

4

deposition, demonstrating "a position inconsistent [with the intent] to arbitrate" and causing "prejudice."

Commerce Club appealed and a divided Court of Appeal reversed. (*Quach v. California Commerce Club, Inc.* (2022) 78 Cal.App.5th 470 (*Quach*).) The majority held that Commerce Club did not waive its right to compel arbitration, concluding that the trial court's finding that Quach had shown prejudice was not supported by substantial evidence. (*Quach*, at p. 478; *id.* at p. 484, citing *St. Agnes, supra*, 31 Cal.4th at p. 1203.) The dissenting justice would have deferred to the trial court's prejudice finding and concluded that Commerce Club had waived its right to compel arbitration. (*Quach,* at pp. 487–488 (conc. & dis. opn. of Crandall, J.).)

Two weeks after the Court of Appeal published its decision, the United States Supreme Court issued *Morgan, supra*, 596 U.S. 411, holding that federal law does not require a showing of prejudice to establish waiver of the right to arbitrate. (*Id.* at pp. 413–414.) We granted review to reexamine our California prejudice rule in light of *Morgan.*

## II. DISCUSSION

At the time the Court of Appeal issued its decision in this case, the framework for determining whether a party had "waived" its right to compel arbitration by engaging in litigation-related conduct was well settled in California. (§ 1281.2.) As we will explain, California courts, like most federal courts, applied an arbitration-specific prejudice requirement and did so regardless of whether the proceedings were governed by the FAA or the CAA. *Morgan, supra*, 596 U.S. 411, has clarified that there is no arbitration-specific prejudice requirement for cases governed by the FAA's procedural rules.

5

(*Id.* at pp. 413–414.)  Commerce Club contends, however, that the CAA's procedural rules apply in this case.[2]  It argues that California policy is distinct from federal policy in that it treats requests to enforce arbitration agreements more favorably than requests to enforce other types of contracts, and accordingly, that California courts must continue to apply an arbitration-specific prejudice requirement in cases governed by the CAA's procedural rules.  For reasons described below, we disagree — California's policy with respect to the enforceability of arbitration agreements, like federal policy, "is about treating arbitration contracts like all others, not about fostering arbitration." (*Morgan*, *supra*, 596 U.S. at p. 418.)  Accordingly, regardless of whether the procedural requirements of the FAA

---

[2] Quach's arbitration agreement did not specifically reference either the CAA or the FAA.  Although the parties disputed which act's rules governed the proceedings, the courts below did not address this question. (See *Quach*, *supra*, 78 Cal.App.5th 470.)  In its briefing in this court, Commerce Club argues — contrary to the position it took below (pre-*Morgan*) — that this dispute is governed by the CAA's procedural rules and that *Morgan* is distinguishable on that basis.  Because we hold that in cases governed by the CAA's procedural rules, as in those governed by the FAA's procedural rules, California courts may not apply an arbitration-specific prejudice requirement, we need not determine which rules apply. (See *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 99 (*Armendariz*) [not determining whether the FAA applied because "our inquiry into the enforceability of the arbitration agreement at issue in this case entails the same inquiry under the CAA"]; *Tiri v. Lucky Chances, Inc.* (2014) 226 Cal.App.4th 231, 241 [court "need not resolve the parties' dispute whether" the CAA or the FAA applies because the two statutes "are interpreted the same under controlling precedent"].)

or the CAA apply in these proceedings, our determination of whether Commerce Club has lost its right to compel arbitration as a result of its litigation-related conduct is governed by generally applicable state law contract principles. As we will explain, these principles do not require a showing of prejudice to establish waiver. Applying the generally applicable law of waiver, we conclude that Commerce Club waived its right to compel arbitration.

## A. California Courts Have Applied an Arbitration-Specific Prejudice Requirement Grounded in a Policy Favoring Arbitration Over Litigation

We described our framework for deciding waiver questions and our reasons for adopting that framework two decades ago in our decision in *St. Agnes*, *supra*, 31 Cal.4th 1187. We began by observing that "[s]tate law, like the FAA, reflects a strong policy favoring arbitration agreements. . . ." (*Id.* at p. 1195.) While acknowledging that both the FAA and our state-law analogue, the CAA, allow a court to deny a petition to compel arbitration based on waiver, we emphasized that "the party seeking to establish a waiver bears a heavy burden of proof" and "any doubts regarding a waiver allegation should be resolved in favor of arbitration." (*Ibid*.) Noting that California courts had found waiver of the right to compel arbitration in " ' "a variety of contexts," ' " we concluded there was no "single test" for determining whether a party had waived its right to arbitrate. (*Id.* at pp. 1195–1196.) Nevertheless, we listed the following factors for courts to consider in making waiver determinations: " ' "(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing

party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party." ' " (*Id.* at p. 1196, quoting *Sobremonte v. Superior Court* (1998) 61 Cal.App.4th 980, 992 and adopting the language of *Peterson v. Shearson/American Exp., Inc.* (10th Cir. 1988) 849 F.2d 464, 467–468.)

After listing these factors, we went on to hold that the party opposing arbitration must show prejudice. (*St. Agnes*, *supra*, 31 Cal.4th at p. 1203.) We characterized " '[t]he presence or absence of prejudice' " resulting from the litigation of an arbitrable dispute as " 'the determinative issue under federal law.' " (*Ibid.*) We observed that, with a few exceptions, federal courts had long held that " 'the mere filing of a lawsuit does not waive contractual arbitration rights' " and that the party resisting arbitration must demonstrate " 'prejudice from the litigation of the dispute.' " (*Ibid.*; see *id.* at fn. 6.) In support of this observation, we cited our 1979 decision in *Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180 (*Doers*), which cited and relied on earlier federal decisions. (*St. Agnes*, at p. 1203.)

We noted that California courts had similarly ruled that the party resisting arbitration must show prejudice resulting from the moving party's litigation-related conduct unless the merits of an arbitrable issue had been litigated. (*St. Agnes*, *supra*, 31 Cal.4th at p. 1203.) This prejudice requirement, we observed, was grounded in "the recognition that California's

arbitration statutes reflect ' "a strong public policy in favor of arbitration" ' " over litigation because arbitration is " ' "relatively inexpensive" ' " and allows parties to " ' "avoid delays incident to a civil action" ' " and obtain a " ' "speedy . . . resolution." ' " (*Id.* at p. 1204.)  We noted that courts generally did not find prejudice unless "the petitioning party's conduct has substantially undermined this important public policy or substantially impaired the other side's ability to take advantage of the benefits and efficiencies of arbitration."  (*Ibid.*)  As examples of an adequate showing of prejudice, we cited to cases in which the parties had litigated the merits of arbitrable claims, substantial discovery related to such claims had occurred, the petition to compel arbitration was filed on "the eve of trial," the movant had used discovery "to gain information about the other side's case that could not have been gained in arbitration," or evidence was lost as a result of delay "associated with the petitioning party's attempts to litigate."  (*Ibid.*)  We emphasized that "courts will not find prejudice where the party opposing arbitration shows only that it incurred court costs and legal expenses" resulting from participating in the litigation of an arbitrable dispute.  (*Id.* at p. 1203; see *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 377 ["substantial expense and delay" is not sufficient to show prejudice unless "caused by the *unreasonable* or *unjustified* conduct of the party seeking arbitration"].)

We observed in *St. Agnes*, *supra*, 31 Cal.4th 1187 that "[s]tate law, like the FAA, reflects a strong policy favoring arbitration agreements and requires close judicial scrutiny of waiver claims" (*id.* at p. 1195) and that prejudice was "critical" to waiver determinations in California, as it was under the FAA (*id.* at p. 1203).  Based on this reasoning, Court of Appeal

decisions have applied *St. Agnes*'s framework regardless of whether the arbitration agreement at issue was governed by the procedural rules of the FAA or the CAA. (*Bower v. Inter-Con Security Systems, Inc.* (2014) 232 Cal.App.4th 1035, 1041–1042 (*Bower*).) Thus, in ruling on waiver questions, California courts have, for decades, been applying a framework grounded in a "strong policy favoring arbitration" over litigation, under which they hold parties seeking to establish waiver to a "heavy burden of proof," requiring a showing of prejudice beyond the loss of time and expenses normally associated with litigating a dispute and resolving any doubts "in favor of arbitration." (*St. Agnes*, at p. 1195; see *id.* at p. 1204; see also *Lewis v. Fletcher Jones Motor Cars, Inc.* (2012) 205 Cal.App.4th 436, 444.) And they have done so regardless of whether the procedural rules of the FAA or the CAA apply to the case. (*Lewis* at p. 444; *Bower*, at pp. 1041–1042.)

## B. The United States Supreme Court Has Rejected Any Federal Arbitration-Specific Rule of Waiver

The United States Supreme Court's decision in *Morgan*, *supra*, 596 U.S. 411 renders the *St. Agnes* framework inapplicable in cases governed by the FAA's procedural rules. In *Morgan*, the Supreme Court addressed whether a court may create federal procedural rules — such as the rule conditioning waiver of the right to arbitrate on prejudice — "based on the FAA's 'policy favoring arbitration.' " (*Morgan*, *supra*, 596 U.S. at p. 419.) The court observed that "[o]utside the arbitration context, a federal court assessing waiver does not generally ask about prejudice" to the party resisting enforcement of a contractual right. (*Id.* at p. 417.) Instead, it focuses on the actions of the person seeking enforcement, seldom considering "the effects of those actions on the opposing party."

(*Ibid*.) Until *Morgan*, most federal appellate courts, like California state courts, had addressed delayed requests to compel arbitration by applying "a rule of waiver specific to the arbitration context" derived from "the FAA's 'policy favoring arbitration.' " (*Id*. at pp. 413–414.) As under the California rule, a party could "waive its arbitration right by litigating only when its conduct ha[d] prejudiced the other side." (*Id*. at p. 414.)

*Morgan* explained that this arbitration-specific prejudice rule originated with the "decades-old" decision in *Carcich v. Rederi A/B Nordie* (2d Cir. 1968) 389 F.2d 692, 696 (*Carcich*), which grounded the rule in what the Second Circuit characterized as " 'an overriding federal policy favoring arbitration.' " (*Morgan, supra*, 596 U.S. at p. 417.) The Supreme Court observed that *Carcich*'s "rule and reasoning spread" over the years, until most federal circuit courts had adopted a prejudice requirement for establishing waiver, relying on a policy favoring arbitration over litigation. (*Morgan*, at p. 418.)

Concluding that the FAA does not authorize federal courts to create arbitration-specific procedural rules, the Supreme Court rejected this additional prejudice requirement. (*Morgan, supra*, 596 U.S. at p. 419.) The court explained: "[T]he FAA's 'policy favoring arbitration' does not authorize federal courts to invent special, arbitration-preferring procedural rules." (*Id*. at p. 418.) Instead, that phrase originated as an acknowledgement that the FAA had, in effect, " 'overrule[d] the judiciary's longstanding refusal to enforce agreements to arbitrate,' " placing arbitration agreements on " 'the same footing as other contracts.' " (*Ibid*.) The Court observed that "[t]he federal policy is about treating arbitration contracts like all others, not about fostering arbitration." (*Ibid*.)

Turning to the statutory language, the court noted that FAA section 6's "directive to a federal court to treat arbitration applications 'in the manner provided by law' for all other motions is simply a command to apply the usual federal procedural rules, including any rules relating to a motion's timeliness. Or put conversely, it is a bar on using custom-made rules, to tilt the playing field in favor of (or against) arbitration." (*Morgan*, *supra*, 596 U.S. at p. 419, quoting 9 U.S.C. § 6.) Accordingly, the court held, "a court may not devise novel rules to favor arbitration over litigation." (*Morgan*, at p. 418.)

The Supreme Court remanded *Morgan* to the Court of Appeals to apply the generally applicable federal law of waiver — which it noted "does not include a prejudice requirement" — or another generally applicable procedural framework the Court of Appeals may find appropriate. (*Morgan*, *supra*, 596 U.S. at p. 419.) The court reserved the questions of what "role state law might play in resolving when a party's litigation conduct results in the loss of a contractual right to arbitrate" and "whether to understand that inquiry as involving rules of waiver, forfeiture, estoppel, laches, or procedural timeliness." (*Id*. at p. 416.)

## C. There is No Basis for an Arbitration-Specific Prejudice Requirement in California Law

*Morgan* directly governs only cases in which the FAA's procedural rules apply; in those cases, it requires California courts to apply generally applicable contract law when determining whether a party to an arbitration agreement has lost the right to compel arbitration by litigating an arbitrable dispute. (*Morgan*, *supra*, 596 U.S. at p. 419.) However, arbitration-related proceedings in California courts are

governed by the CAA's procedural rules unless their application is preempted or the parties have expressly agreed that the FAA's procedural rules apply. (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 408–409 (*Rosenthal*); *Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 394 (*Cronus*).) While *Morgan* made clear that when the proceedings are governed by the FAA's procedural rules, it is inappropriate to apply a different standard of waiver than applies in other contractual contexts, it left open the question whether a court may properly apply an arbitration-specific standard when state procedural law governs the proceedings. (*Id.* at pp. 416, 419.) We now consider whether courts may apply an arbitration-specific prejudice requirement in cases governed by the CAA's procedural rules.

Commerce Club argues that since *Morgan* does not require any change to our analysis of when a party has lost the right to compel arbitration under the CAA's procedural rules, we should adhere to *St. Agnes* and continue to apply a prejudice requirement. Our policy of adhering to precedent is rooted in our desire to promote certainty, predictability, and stability in the law — to enable people to rely on it and conform their conduct to it. (*People v. Mendoza* (2000) 23 Cal.4th 896, 924 (*Mendoza*).) These considerations have special force when our precedent interprets a state statute, because in that context the Legislature has the power to correct our errors. (*Tansavatdi v. City of Rancho Palos Verdes* (2023) 14 Cal.5th 639, 666.) However, even in the statutory interpretation context, our policy does not " 'shield court-created error from correction' " but instead allows us the flexibility "to reconsider, and ultimately to depart from, our own prior precedent in an appropriate case."

(*Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 296 (*Moradi-Shalal*).)

We have found reconsideration of our precedent to be warranted when a development in the law indicates "an earlier decision was unsound, or has become ripe for reconsideration." (*Moradi-Shalal*, 46 Cal.3d at p. 297.) *Morgan*, *supra*, 596 U.S. 411 is such a development. (See *People v. Anderson* (1987) 43 Cal.3d 1104, 1139–1141 [reexamining decision interpreting California statute in light of intervening United States Supreme Court decision clarifying federal law].) While *Morgan* is not binding when the CAA's procedural rules apply, our state-law arbitration-specific prejudice rule is based on the federal appellate authority that *Morgan* disapproved. Rather than approaching the question whether the CAA requires a showing of prejudice to establish waiver as a matter of statutory interpretation, we simply adopted the federal rule that the United States Supreme Court has now rejected. As we will explain, *Morgan*'s reasoning about the policy underpinnings of the federal arbitration-specific rule of waiver applies with equal force in the context of the CAA. Accordingly, a reexamination of our court-created arbitration-specific rule of waiver is warranted.

When interpreting any statute, our goal is to determine the Legislature's intent and give effect to the statute's purpose. (*Brennon B. v. Superior Court* (2022) 13 Cal.5th 662, 673.) We begin with the language of the relevant provision, considering it in its statutory context. (*Ibid*.) We usually interpret the words of a statute in accordance with their ordinary meaning, though if a word has a well-established legal meaning, we assume the Legislature intended to use it in that sense. (*Arnett v. Dal Cielo* (1996) 14 Cal.4th 4, 19 (*Arnett*); Civ. Code, § 13.) If the statutory

language is unclear, we may look to legislative history and public policy as aids in determining how best to give effect to Legislative intent. (*Brennon B.* at p. 673.)

The provision of the CAA at issue, section 1281.2, sets out an exception to the general rule that courts must enforce written arbitration agreements. (*Id.*, subd. (a).) This exception applies when "the right to compel arbitration has been waived by the petitioner." (*Ibid.*) Because the CAA does not say what it means for the right to have been "waived," we look to generally applicable law to supply that meaning. (See *Arnett, supra,* at p. 19; Civ. Code, § 13.) The statute, therefore, is most naturally read as directing courts to apply generally applicable law in determining whether the right to compel arbitration has been waived.

This reading finds support in section 1281, part of the CAA, which provides, in language similar to section 2 of the FAA, that an arbitration agreement is "valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." (§ 1281; compare 9 U.S.C. § 2 [arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"].) The parallel language between section 1281 and section 2 of the FAA suggests that both statutes contain the same directive and embody the same policy. (See *Armendariz, supra,* 24 Cal.4th at p. 98 ["[U]nder California law, as under federal law, an arbitration agreement may only be invalidated for the same reasons as other contracts"].) That policy favors the enforcement of arbitration agreements as it favors the enforcement of any other contract; it requires courts to "place arbitration agreements on an equal footing with other contracts, [citation], and enforce them according to their terms." (*AT&T*

*Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 339.) Citing cases interpreting section 2 of the FAA, *Morgan* relied on this equal footing principle to support its conclusion that "the FAA's 'policy favoring arbitration' does not authorize federal courts to invent special, arbitration-preferring procedural rules." (*Morgan*, *supra*, 596 U.S. at p. 418.) It follows that section 1281 similarly should be interpreted to require a court to "hold a party to its arbitration contract just as the court would to any other kind," not to authorize a court to "devise novel rules to favor arbitration over litigation." (*Morgan, supra*, 596 U.S. at p. 418.)

Indeed, outside of the waiver context, we have interpreted this language in section 1281 and FAA section 2 as allowing a court to decline to enforce an arbitration agreement on the same grounds on which it could do so under generally applicable state contract law, without requiring any additional showing based on a policy "favoring" arbitration. For example, in *OTO*, *L.L.C. v. Kho* (2019) 8 Cal.5th 111 (*OTO*), we applied the generally applicable standard of unconscionability to an arbitration agreement, observing that "the doctrine's application to arbitration agreements must rely on the same principles that govern all contracts." (*Id.* at p. 125.) Similarly, when considering an unconscionability argument in *Armendariz*, *supra,* 24 Cal.4th 83, we noted that "although we have spoken of a 'strong public policy of this state in favor of resolving disputes by arbitration' [citation], Code of Civil Procedure section 1281 makes clear that an arbitration agreement is to be rescinded on the same grounds as other contracts or contract terms. In this respect, arbitration agreements are neither favored nor disfavored, but simply placed on an equal footing with other contracts." (*Id.* at pp. 126–127.) We have likewise

applied generally applicable state law in the context of cases involving issues of fraud in the execution and fraud in the inducement. (See *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 973–974; *Rosenthal, supra,* 14 Cal.4th at p. 419.) The approach we have taken in these other contexts is consistent with the Supreme Court's observation in *Morgan* that the policy " 'favoring' " arbitration is not one of promoting arbitration over litigation, but instead of ensuring that arbitration agreements are not disfavored, i.e., that they are treated like other contracts. (*Morgan, supra,* 596 U.S. at p. 418.) By contrast, the arbitration-specific prejudice requirement we have applied in deciding waiver issues is based on a policy that treats requests to enforce arbitration agreements more favorably than requests to enforce other types of contracts. By conforming our approach in the waiver context to the Supreme Court's approach in *Morgan,* we bring our law concerning waiver determinations in line with our law related to other questions of arbitrability.

Perhaps recognizing that the CAA provides no textual basis for applying an arbitration-specific rule of prejudice, Commerce Club seeks to distinguish *Morgan* by arguing that California law, as reflected in *St. Agnes*, is different from federal law because California law embraces a policy favoring arbitration over litigation. Commerce Club suggests that whatever the federal policy might be, California's "policy favoring arbitration" supports imposition of an arbitration-specific prejudice requirement. But an examination of the legislative history reveals that California policy, like federal policy, is fundamentally about making arbitration agreements " 'as enforceable as other contracts, but not more so.' " (*Morgan, supra,* 596 U.S. at p. 418.)

The United States Supreme Court observed in *Morgan* that, when understood in historical context, the policy favoring arbitration is " 'merely an acknowledgment of the FAA's commitment to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts.' " (*Morgan, supra,* 596 U.S. at p. 418.) We similarly have observed that the FAA "was intended 'to overcome an anachronistic judicial hostility to agreements to arbitrate, which American courts had borrowed from English common law.' " (*Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1343.)

The same is true of the CAA. The Legislature's original adoption — two years after the enactment of the FAA — of a statute "declaring arbitration agreements to be irrevocable and enforceable in terms identical" to the terms of the FAA was part of the historical shift away from hostility toward arbitration. (*Keating v. Superior Court* (1982) 31 Cal.3d 584, 601 (*Keating*); *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 20.) That statutory language remains unchanged today, with the language of the CAA closely paralleling the language of the FAA. (Compare § 1281 [an arbitration agreement is "valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract"] with 9 U.S.C. § 2 [arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"]; see Recommendation and Study Relating to Arbitration (Dec. 1960) 3 Cal. Law Revision Com. Rep. (1961) p. G-5 (CLRC Recommendation) [noting that California was "among the small but growing group of states that have rejected the common law hostility to the enforcement of arbitration agreements"].) From this shared language and history it is

apparent that the state policy " 'favoring' " arbitration, like the federal policy, "is about treating arbitration contracts like all others, not about fostering arbitration." (*Morgan, supra*, 596 U.S. at p. 418.)

Nothing in the legislative history of section 1281.2, which was enacted as part of the CAA, suggests that the Legislature intended courts to apply an arbitration-specific rule in the waiver context. The California Law Revision Commission proposed the provision in its report leading to the CAA's adoption. The Commission recommended clarifying amendments to the statute for purposes of codifying the principle that, in ruling on a request to compel arbitration, a court may consider "whether the party seeking to compel arbitration has waived [the] right to do so or whether any other grounds exist that render the contract unenforceable." (CLRC Recommendation, *supra*, at p. G-7; see *id*. at p. G-36 [noting that courts had interpreted statute authorizing a party to obtain court order compelling arbitration as permitting them to rule on defenses, including waiver].) The Commission observed that the principle that a party can waive the right to compel arbitration "seems to be well accepted by the California courts." (*Id*. at p. G-37.) It recommended amending the statute to clearly express the general idea that a court can deny a petition to compel arbitration based on a waiver defense, while leaving it to the courts to apply the defense "to specific factual situations." (*Ibid*.) The report did not suggest that the Commission understood the waiver defense as requiring a showing of prejudice. Indeed, one of the cases cited in the report found waiver without discussing prejudice, explaining: "Appellants did none of the things required by law to enforce their right to arbitrate and on the contrary filed their answer and amended

answers in this action.  It seems clear to us that if they ever had such right, the facts in the case at bar indicate clearly that it was waived." (*Pneucrete Corp. v. U.S. Fidelity & Guaranty Co.* (1935) 7 Cal.App.2d 733, 741; see CLRC Recommendation, *supra*, at p. G-36, fn. 65.)

Our decision in *St. Agnes* did not examine the language of the CAA or its legislative history; instead, after observing that prejudice " 'is the determinative issue under federal law' " we declared that "[i]n California, whether or not litigation results in prejudice also is critical in waiver determinations."  (*St. Agnes*, *supra*, 31 Cal.4th at p. 1203.)  The cases we cited to support that declaration, such as *Doers*, *supra*, 23 Cal.3d 180, link back to *Carcich*, *supra*, 389 F.2d 692, the "decades-old Second Circuit decision" that *Morgan, supra*, 596 U.S. at p. 417, identified as the origin of the arbitration-specific prejudice requirement applied by federal Courts of Appeals.[3]

In *Doers*, we granted review to resolve a conflict between Court of Appeal decisions over whether the mere filing of a lawsuit by a party who had agreed to arbitrate a claim constituted a waiver of the right to arbitrate.  (*Doers*, *supra*, 23 Cal.3d at pp. 182–183.)  We held that a party does not waive the right to arbitrate when it engages in litigation that does not reach the merits of a dispute, but in a footnote said: "We do not preclude the possibility that a waiver could occur prior to a judgment on the merits if prejudice could be demonstrated." (*Id.*

---

[3] The other decisions we cited in *St. Agnes — Keating, supra,* 31 Cal.3d 584, *Christensen v. Dewor Developments* (1983) 33 Cal.3d 778, and *Davis v. Continental Airlines, Inc.* (1997) 59 Cal.App.4th 205 — similarly did not engage in statutory analysis, instead citing *Doers* or decisions citing *Doers* in support of the prejudice requirement.

at p. 188, fn. 3.) As support for our holding, we relied on federal cases, observing that "[u]nder federal law, it is clear that the mere filing of a lawsuit does not waive contractual arbitration rights. The presence or absence of prejudice from the litigation of the dispute is the determinative issue under federal law." (*Id.* at p. 188.) Citing *Carcich* — the Second Circuit decision that *Morgan, supra,* 596 U.S. at page 417, identified as the origin of the federal arbitration-specific prejudice requirement — we observed that the analogy between California law and federal law was "significant inasmuch as the basis for the federal rule is the important national policy favoring arbitration." (*Doers* at p. 189.) We reasoned that in resolving the conflict over whether the filing of a lawsuit constituted a waiver of the right to compel arbitration, we should pick the result that "comport[ed] with the 'strong public policy' favoring arbitration." (*Ibid.*)

It thus appears that the stringent standards to which we have held a party seeking to establish waiver — and, in particular, the prejudice requirement — are based on a now-abrogated federal rule that we had adopted in order to conform state procedure to federal procedure. (*St. Agnes, supra,* 31 Cal.4th at p. 1195; *id.* at p. 1204.) As we have observed, California courts have, for decades, been applying the arbitration-specific prejudice requirement regardless of whether the case was governed by the CAA or the FAA. (*Bower, supra,* 232 Cal.App.4th at pp. 1041–1042.) California's arbitration-specific prejudice requirement shares a history with the federal prejudice requirement at issue in *Morgan*; both originated in federal circuit court precedent reflecting the faulty understanding of the federal policy favoring arbitration that *Morgan* corrected. After *Morgan*, the desire for procedural uniformity weighs in favor of abrogating California's

arbitration-specific prejudice requirement and applying the same principles in determining whether a party has lost the right to compel arbitration as would apply under generally applicable contract law. (See *Morgan, supra,* 596 U.S. at p. 419.) Because the state law arbitration-specific prejudice requirement finds no support in statutory language or legislative history, we now abrogate it.[4]

While practical concerns do not dictate our answer to what is, at core, a question of statutory interpretation, it seems worth noting that preserving the arbitration-specific prejudice requirement for cases governed by the CAA's procedural rules would risk creating uncertainty and confusion and undermining the purpose of arbitration. (See *Mendoza, supra,* 23 Cal.4th at p. 924.) Although the CAA's procedural rules apply by default to cases brought in California courts, including those in which the FAA governs the arbitrability of the controversy, the FAA's procedural rules may apply if the parties expressly agree they do or if the CAA's procedural rules are preempted. (*Rosenthal, supra,* 14 Cal.4th at pp. 408–410; *Cronus, supra,* 35 Cal.4th at p. 394.) Because in the past we have applied the same principles when determining whether a party has lost the right to compel arbitration under the CAA as under the FAA, California courts have been able to avoid the sometimes tricky choice of law and preemption questions involved in determining which statute governs proceedings to enforce an arbitration agreement. (See *Valencia v. Smyth* (2010) 185 Cal.App.4th 153, 162–180

---

[4] To the extent they are inconsistent with our analysis, we overrule *St. Agnes Medical Center v. PacifiCare of California, supra,* 31 Cal.4th 1187 and overrule or disapprove opinions cited in *St. Agnes* or relying upon our decision in that case.

[describing choice of law and preemption questions].) Applying a different rule for determining when a party has lost the right to arbitrate a dispute in cases governed by the CAA's procedural rules from the rule that applies in cases governed by the FAA's procedural rules would introduce uncertainty into the law that would lead to additional litigation. Such uncertainty would be contrary to arbitration's purpose of providing an expedient and inexpensive means of dispute resolution. (*OTO, supra*, 8 Cal.5th at p. 125.)

In sum, we conclude that the procedural rules of the CAA, like those of the FAA, are grounded in a policy of "treating arbitration [agreements] like all others," not one preferring arbitration to litigation. (*Morgan, supra*, 596 U.S. at p. 418.) Accordingly, in determining whether a party to an arbitration agreement has lost the right to arbitrate by litigating the dispute, a court should treat the arbitration agreement as it would any other contract, without applying any special rules based on a policy favoring arbitration. That is, courts should apply the same procedural rules that they would apply to any other contract. (*Ibid.*)

### D. Under Generally Applicable Law, No Showing of Prejudice is Required to Establish Waiver of a Contractual Right

In reversing the trial court's order denying Commerce Club's motion to compel arbitration, the Court of Appeal applied *St. Agnes*'s arbitration-specific prejudice rule, which we have now abrogated. Relying on *St. Agnes, supra*, 31 Cal.4th 1187 at page 1195, the court emphasized that " '[i]n light of the policy in favor of arbitration, "waivers are not to be lightly inferred and the party seeking to establish a waiver bears a heavy burden of

proof.” ’ ”  (*Quach, supra*, 78 Cal.App.5th at p. 477.) Accordingly, the court observed that “ ‘merely participating in litigation, by itself, does not result in a waiver,’ ” and “ ‘courts will not find prejudice where the party opposing arbitration shows only that it incurred court costs and legal expenses.’ ” (*Id.* at p. 479.)  Based on this language from *St. Agnes*, the Court of Appeal concluded that Quach had not met his burden of proof. (See *Quach* at p. 479 [“Quach has not met *St. Agnes*’s test.”].)  It reasoned that Quach had shown only that “the parties participated in litigation,” and had “not shown any prejudice apart from the expenditure of time and money on litigation.” (*Ibid.*)

Having abrogated the arbitration-specific rule of waiver that the Court of Appeal applied, we now must determine what generally applicable state contract law principle to apply in its place.  In *Morgan*, the Supreme Court indicated that various defenses may be implicated when a party opposes arbitration based on the other party’s litigation conduct, including “waiver, forfeiture, estoppel, laches, or procedural timeliness.” (*Morgan, supra*, 596 U.S. at p. 416; see *id.* at p. 419.)  Similarly, under California law, a party may, as a result of its litigation conduct, lose its right to compel arbitration on various grounds.  (See, e.g., *Ross v. Blanchard* (1967) 251 Cal.App.2d 739, 742 [estoppel]; *Chase v. Blue Cross of California* (1996) 42 Cal.App.4th 1142, 1151 [forfeiture]; *Wagner Construction Co. v. Pacific Mechanical Corp.* (2007) 41 Cal.4th 19, 30 [timeliness]; 30 Cal.Jur. 3d (2024) Estoppel and Waiver, § 30 [distinguishing waiver from other defenses].)  In ruling on a motion to compel arbitration, a court should separately evaluate each generally applicable state contract law defense raised by the party opposing arbitration.  It should not lump distinct legal

defenses into a catch-all category called "waiver." (See *Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307, 315 [noting the longstanding "confusion engendered by the multiple meanings of 'waiver' "].)

Among the factors we identified as relevant to a "waiver" determination in *St. Agnes* are some that are relevant to other defenses, such as forfeiture, estoppel, laches or timeliness, but not to waiver. (See *St. Agnes, supra,* 31 Cal.4th at p. 1196 [listing factors relevant to "waiver" analysis].) Courts should not apply the *St. Agnes* factors as a single multifactor test for determining whether the right to compel arbitration has been lost through litigation. (See, e.g., *Wagner*, at p. 31 [characterizing *St. Agnes* factors as a multifactor test]; *Burton v. Cruise* (2010) 190 Cal.App.4th 939, 944 [same]; *Davis v. Shiekh Shoes, LLC* (2022) 84 Cal.App.5th 956, 962 [describing trial court's application of *St. Agnes* factors as multifactor test].) Instead, a court should be careful to consider only those factors that are relevant to the specific state-law defense the party resisting arbitration has raised.

Quach raised the defense of "waiver" to Commerce Club's motion to compel arbitration. Because we conclude the trial court's ruling that Commerce Club waived its right to compel arbitration was correct under the generally applicable law of waiver, we need not consider whether any other generally applicable state contract law defense applies.

To establish waiver under generally applicable contract law, the party opposing enforcement of a contractual agreement must prove by clear and convincing evidence that the waiving party knew of the contractual right and intentionally relinquished or abandoned it. (*Lynch, supra,* 3 Cal.5th at p. 475;

see *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 31
(*Waller*) [burden is on party claiming waiver " 'to prove it by
clear and convincing evidence' "]; 30 Cal.Jur. 3d, *supra*, Estoppel
and Waiver, § 38.)   Under the clear and convincing evidence
standard, the proponent of a fact must show that it is "highly
probable" the fact is true.   (*Conservatorship of O.B.* (2020)
9 Cal.5th 989, 995 (*O.B.*).)  The waiving party's knowledge of the
right may be "actual or constructive."  (*Outboard Marine Corp.
v. Superior Court* (1975) 52 Cal.App.3d 30, 41.)   Its intentional
relinquishment or abandonment of the right may be proved by
evidence of words expressing an intent to relinquish the right or
of conduct that is so inconsistent with an intent to enforce the
contractual right as to lead a reasonable factfinder to conclude
that the party had abandoned it.  (*Lynch*, *supra*, 3 Cal.5th at
p. 475.)

The waiver inquiry is exclusively focused on the waiving
party's words or conduct; neither the effect of that conduct on
the party seeking to avoid enforcement of the contractual right
nor that party's subjective evaluation of the waiving party's
intent is relevant.  (See *McCormick v. Orient Insurance Co.*
(1890) 86 Cal. 260, 262 ["the term 'waiver' is used to designate
the act, or the consequences of the act, of one side only"]; *Altman
v. McCollum* (1951) 107 Cal.App.2d Supp. 847, 862 [waiver
"depends upon the intention of one party only," i.e., the party
alleged to have waived the right].)  This distinguishes waiver
from the related defense of estoppel, "which generally requires
a showing that a party's words or acts have induced detrimental
reliance by the opposing party."  (*Lynch, supra*, 3 Cal.5th at
pp. 475–476; see *DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum
Cafe & Takeout III, Ltd.* (1994) 30 Cal.App.4th 54, 59 [by
contrast to estoppel, waiver "does not require any act or conduct

by the other party"].)[5]  To establish waiver, there is no requirement that the party opposing enforcement of the contractual right demonstrate prejudice or otherwise show harm resulting from the waiving party's conduct. (*Lynch*, at p. 475; see *City of Hollister v. Monterey Ins. Co.* (2008) 165 Cal.App.4th 455, 487 [Waiver does not require "any demonstration that the other party was caused by the waiver to expose himself to any harm"].)

### E. Applying the Generally Applicable Law of Waiver, We Conclude Commerce Club Has Lost Its Right to Compel Arbitration

In ruling on Commerce Club's motion to compel arbitration, the trial court did not have the benefit of *Morgan* or of our decision today, so in considering Quach's waiver defense, it did not apply the generally applicable law of waiver. We do so now, reviewing de novo the undisputed record of the trial court proceedings and asking whether Quach has established by clear and convincing evidence that Commerce Club knew of its contractual right to compel arbitration and intentionally

---

[5] Commerce Club observes that some California courts have considered prejudice in ruling on waiver questions outside the arbitration context. This is unsurprising, given the tendency of courts and litigants to conflate waiver with other defenses. (See *Lynch, supra,* 3 Cal.5th at p. 476 ["Although the distinctions between waiver, estoppel, and forfeiture can be significant, the terms are not always used with care."].) To the extent that some Court of Appeal decisions have suggested a showing of prejudice is required to establish waiver, those decisions are inconsistent with our precedent, which makes clear that waiver determinations are to be made based on the words and conduct of the waiving party. (See *id.*; *Waller*, *supra*, 11 Cal.4th at p. 31.)

relinquished or abandoned that right. (See *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 18–19 [we may uphold the trial court's ruling if correct under the law].)[6]

The record shows by clear and convincing evidence that Commerce Club was aware of its right to compel arbitration, despite the asserted failure of Commerce Club's counsel to find a complete copy of Quach's arbitration agreement sooner. In a declaration Commerce Club submitted in support of its motion

---

[6] When a trial court has applied the clear and convincing evidence burden of proof required by the generally applicable law of waiver and made factual findings in support of a waiver determination, the question on review is "whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*O.B.*, *supra*, 9 Cal.5th at pp. 995–996; see also *People v. Ramirez* (2022) 14 Cal.5th 176, 190; *Waller*, *supra*, 11 Cal.4th at p. 31.) The trial court's order below cited to *Hoover v. American Income Life Ins. Co.* (2012) 206 Cal.App.4th 1193, in which the Court of Appeal, quoting *St. Agnes*, *supra*, 31 Cal. 4th at p. 1195, observed that waiver is not " ' " 'lightly inferred' " ' " and "the party claiming the other waived the right to arbitrate 'bears a heavy burden of proof.' " (*Hoover* at p. 1203.) We need not decide whether the trial court applied a burden of proof equivalent to the clear and convincing evidence burden of proof required by the generally applicable law of waiver since even under a more stringent de novo standard of review, we conclude that Quach has established by clear and convincing evidence that Commerce Club waived its right to compel arbitration. Going forward, trial courts should apply a clear and convincing evidence burden of proof and reviewing courts should uphold findings of waiver when "the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable" that the party knew of its contractual right to compel arbitration and intentionally relinquished or abandoned that right. (*O.B.*, *supra*, 9 Cal.5th at pp. 995–996.)

to compel arbitration, its director of human resources attested that in 2015 — during Quach's employment — Commerce Club required all employees to sign form agreements providing for binding arbitration of employment-related disputes. Before Quach filed suit, Commerce Club provided him the signature page of his arbitration agreement, signed in 2015. And in its answer to Quach's complaint, Commerce Club asserted that Quach's arbitration agreement barred his suit and that he should be compelled to arbitrate. Based on these undisputed facts, we conclude it is "highly probable" that Commerce Club knew of its right to compel arbitration. (*O.B.*, *supra*, 9 Cal.5th at p. 995; see *Lynch*, *supra*, 3 Cal.5th at p. 475.)

The record of Commerce Club's words and conduct also demonstrates by clear and convincing evidence its intentional abandonment of the right to arbitrate. Indeed, on this record, Commerce Club's position, if accepted, would surely create undue delay and gamesmanship going forward. Rather than moving to compel arbitration at the outset of the case, Commerce Club answered the complaint and propounded discovery requests, suggesting it did not intend to seek arbitration. Although Commerce Club asserted in its answer that Quach should be compelled to arbitrate, its counsel did not otherwise raise the issue with Quach's counsel or with the court. Instead, it affirmatively indicated its preference for a jury trial and actively pursued discovery. On Commerce Club's initial case management conference statement, filed about three months after Quach filed his complaint, Commerce Club requested a jury trial, left the check box for indicating it was "willing to participate" in arbitration blank, and represented that the only motion it intended to file was a "dispositive motion." After the case management conference, Commerce

Club posted jury fees. In the following months, despite the disruptions caused by the COVID-19 pandemic, Commerce Club actively engaged in discovery, taking Quach's deposition for a full day and corresponding with Quach's counsel about discovery disputes. It was not until 13 months after Quach filed his complaint that Commerce Club first sought to enforce its right to compel arbitration. This evidence of Commerce Club's words and conduct shows that Commerce Club chose not to exercise its right to compel arbitration and to instead defend itself against Quach's claims in court. (See *Lynch*, *supra*, 3 Cal.5th at p. 475.)

This conclusion is not undermined by Commerce Club's assertions that it did not move to compel arbitration on the "eve of trial," that the discovery it conducted was "minimal," that it did not gain information about his case that it could not have gotten in arbitration, and that Quach has not litigated the merits of his claims. (See *St. Agnes*, *supra*, 31 Cal.4th at p. 1204.) The record in this case shows that, being fully aware of its right to compel arbitration, Commerce Club chose not to do so for 13 months, affirmatively indicated its intent to pursue a jury trial rather than arbitration, and actively engaged in discovery — words and conduct markedly inconsistent with an intent to arbitrate. Accordingly, we conclude Commerce Club waived its right to arbitrate the dispute. (*Lynch*, *supra*, 3 Cal.5th at p. 475.)

## CONCLUSION

We reverse the judgment of the Court of Appeal and remand for further proceedings consistent with our decision.

**GROBAN, J.**

**We Concur:**

**GUERRERO, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**JENKINS, J.**
**EVANS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  Quach v. California Commerce Club, Inc.

_____

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 78 Cal.App.5th 470
**Review Granted (unpublished)**
**Rehearing Granted**

_____

**Opinion No.** S275121
**Date Filed:** July 25, 2024

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Michael L. Stern

_____

**Counsel:**

Sanders Roberts, Reginald Roberts, Jr., Eric S. Mintz, Ayan K. Jacobs; Benedon & Serlin, Wendy S. Albers, Gerald M. Serlin and Kelly Riordan Horwitz for Defendant and Appellant.

Law Offices of Dilip Vithlani, Dilip Vithlani; The Law Office of Jonathan J. Moon, Jonathan J. Moon; The Vora Law Firm, Nilay U. Vora, Jeffrey A. Atteberry, William M. Odom and Amy (Lou) Egerton-Wiley for Plaintiff and Respondent.

Bosko and David Bosko for Asian Americans Advancing Justice Southern California, Thai Community Development Center and Council on American-Islamic Relations, California, as Amici Curiae on behalf of Plaintiff and Respondent.

McGuinn, Hillsman & Palefsky, Cliff Palefsky, Keith Ehrman; Pine Tillett Pine and Norman Pine for California Employment Lawyers Association and Consumer Attorneys of California as Amici Curiae.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Kelly Riordan Horwitz
Benedon & Serlin, LLP
22708 Mariano Street
Woodland Hills, CA 91367
(818) 340-1950

Nilay U. Vora
The Vora Law Firm, P.C.
201 Santa Monica Boulevard, Suite 300
Santa Monica, CA 90401
(424) 258-5190